Mitchell J. Popham (SBN: 126194)
mpopham@lockelord.com
LOCKE LORD LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071
Telephone:  213-485-1500
Fax:  213-485-1200

Attorney for Plaintiff
PLASVACC USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLASVACC USA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HESKA CORPORATION, a Delaware corporation; DIAMOND ANIMAL HEALTH, INC., an Iowa corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> **CV14-08812 AB(ASx)** <br><br> **COMPLAINT FOR:** <br><br> **(1) NON COMPLIANCE WITH THE VIRUS-SERUM-TOXIN ACT;** <br> **(2) BREACH OF CONTRACT;** <br> **(3) STRICT PRODUCTS LIABILITY;** <br> **(4) BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY;** <br> **(5) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200; AND** <br> **(6) NEGLIGENCE** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Plasvacc USA, Inc. alleges as follows:

## JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the claims in this action arising from and involving a substantial question under the Virus-Serum-Toxin Act (the "VSTA"), 21 U.S.C. §§ 151 to 159.

2. This Court has supplemental jurisdiction over any state law claims in this action pursuant to 28 U.S.C. § 1367(a) because the state law claims are related to the federal claims in this action and form part of the same case or controversy.

3. Under 28 U.S.C. § 1391(b), venue is proper in the United States District Court, Central District of California because a substantial part of the events or omissions giving rise to the claims stated herein occurred in this District.

## PARTIES

4. Plaintiff Plasvacc USA, Inc. ("Plasvacc") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

5. Defendant Diamond Animal Health, Inc. ("Diamond") is a corporation organized and existing under the laws of the State of Iowa. Diamond is Heska Corporation's wholly owned subsidiary.

6. Defendant Heska Corporation ("Heska") is a corporation organized and existing under the laws of the State of Delaware.

7. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendant Does 1 through 10, inclusive, are unknown to Plasvacc, who therefore sues such defendants by such fictitious names. Plasvacc will amend this complaint to allege the true names and capacities of such defendants when ascertained.

8. Plasvacc is informed and believes, and alleges thereon, that Heska, and Diamond (collectively, the "Defendants") are jointly and severally responsible in some manner for the occurrences alleged in this Complaint and that Plasvacc's

damages were proximately caused by Defendants at all times mentioned in this Complaint.

9. Further, Plasvacc is informed and believes, and alleges thereon, that during the course of their business transactions, Plasvacc dealt with Defendants interchangeably. As such, Plasvacc alleges thereon that Heska and Diamond assisted, aided and abetted, adopted, ratified, approved or condoned the actions of each other and are together jointly and severally liable for the damages alleged in this Complaint.

## NATURE OF THE ACTION

10. This Complaint relates to a complete and utter failure by Defendants to uphold their contractual obligations. Specifically, Plasvacc contracted with Defendants to manufacture an animal vaccine pursuant to an Outline of Production submitted to the United States Department of Agriculture (the "USDA"). Defendants failed to produce the vaccine in accordance with the Outline of Production, and consequently caused Plasvacc serious harm.

## GENERAL ALLEGATIONS

11. The VSTA makes it unlawful to prepare or sell any "worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product intended for use in the treatment of domestic animals." 21 U.S.C. § 151. The USDA is given the authority to enforce the VSTA. 21 U.S.C. § 154. While generally a USDA product license is required to produce or ship any biological product, the USDA does allow an establishment to produce an experimental biological product without a license. 9 C.F.R. §103.1. However, prior to producing an experimental product, the establishment must obtain USDA approval through submission of certain information to the USDA, including a description of the product to be produced. *Id.* Further, before an entity can ship an experimental product, the entity must request authorization from the USDA. 9 C.F.R. § 103.3. Among other information, the requesting entity must submit a description of the product to be shipped. 9 C.F.R. § 103.3. The USDA can then approve the product for shipment. 9 C.F.R. § 103.3.

When shipped, the product must bear a label that identifies or names the product approved by the USDA. 9 C.F.R. § 103.3.

12. Plasvacc is a manufacturer and distributor of blood plasma products used to supplement the immune response system in animals. In particular, Plasvacc manufactures two hyperimmune plasmas for use on foals, Equiplas R and Equiplas REA.

13. Equiplas R and Equiplas REA combat and prevent *Rhodococcus equi* ("*R. equi*"), a soil organism that causes a persistent bacterial pneumonia in foals. Pursuant to USDA requirements, plasma must have a relative potency of the *R. equi* antibodies ("relative potency") at a level of one or higher to be marketed as Equiplas R or Equiplas REA. If the plasma does not meet this standard, it must be marketed and sold as a lesser product.

14. To meet the USDA requirements, Plasvacc maintains a rigorous production process for its Equiplas R and Equiplas REA plasmas. Plasvacc sustains a USDA approved herd of approximately ninety donor horses. Prior to introduction to the herd, the horses are screened with costly tests, including blood typing, viral testing, farrier work, dental work and general medical reviews. Next, the horses are injected with a specific regimen of commercial and custom-made vaccines that induce the production of antibodies to the *R. equi* bacteria in the plasma of the donor horses. The horses' plasma is then extracted from their blood samples with a complex centrifugal process. Lastly, the plasma is tested to determine whether the plasma's relative potency is at a level of one or higher.

15. Until November 2012, Plasvacc's donor herd consistently produced plasma with a relative potency at a level of one or higher. In fact, Plasvacc had as many as twenty horses that produced plasma suitable for the Equiplas R and Equiplas REA products. Several of these horses were producing plasma that had a relative potency significantly greater than one.

16. Defendants manufacture and sell veterinary products, including vaccines.

4
COMPLAINT

17. Beginning in September 2009, Plasvacc and Defendants entered into discussions regarding the production of vaccines. Specifically, Dr. Richard Brandon, Plasvacc's research and development veterinarian, and Laurie Peterson, Heska's general manager, discussed the production of an *R. equi* vaccine.

18. Thereafter, in September 2012, Plasvacc sent to Defendants Purchase Order #H901911 (the "Purchase Order") asking Defendants to manufacture a *R. equi* master seed and a *R. equi* vaccine and to obtain the proper USDA approval for the vaccine.

19. Plasvacc provided Defendants with the scientific process required to manufacture the *R. equi* vaccine. Significantly, Plasvacc instructed that the vaccine should be made with a formalin kill period of thirty minutes and an optimal bacterial count of $4 \times 10^8 \sim 4 \times 10^9$.

20. On information and belief, Defendants submitted to the USDA an outline for production of an experimental product (the "Outline for Production") containing the specifications for the production of the *R. equi* vaccine that Plasvacc provided.

21. On information and belief, Defendants accepted the terms of the Purchase Order and obtained the required approval from the USDA to produce the *R. equi* vaccine as an experimental product. Further, Defendants obtained approval to ship the *R. equi* vaccine to Plasvacc. The USDA approved these actions based on the information submitted by Defendants including the Outline for Production.

22. In October 2012, Plasvacc received the vaccine from Defendants (the "October vaccine") along with a corresponding invoice. Without knowledge of any defects in Defendants' product, Plasvacc fulfilled its obligations under the Purchase Orders by paying Defendants for the October vaccine.

23. Still without knowing of any potential defects in Defendants' product, in November 2012, Plasvacc began immunizing its donor herd with the October vaccine. Soon thereafter, Plasvacc noticed a substantial decrease in the donor herd's ability to

produce Equiplas R and Equiplas REA grade plasma. Plasvacc immediately began investigating the matter.

24. As a result of the investigation, Dr. Ross Wilson, Plasvacc's chief scientific officer, suspected that the issue was not with the donor herd, but rather with the October vaccine. Consequently, in May 2013, he contacted Ms. Peterson regarding the October vaccine's ineffectiveness. Ms. Peterson replied that she would investigate the issue.

25. After numerous attempts to contact Ms. Peterson by Plasvacc about the progress of her investigation, Defendants finally responded in June 2013 that no quality control issues were found with the October vaccine, but ensured Plasvacc that further investigative tests would be conducted.

26. From July 2013 till December 2013, Plasvacc continued to engage Defendants about its suspicions concerning the October vaccine.

27. On information and belief, in December 2013, Plasvacc and Defendants held a teleconference wherein Defendants finally admitted fault in producing the October vaccine. Defendants admitted that their technician who manufactured the first batch of vaccine diluted the bacterial content, causing the bacterial count to drop below the required $4 \times 10^8 \sim 4 \times 10^9$ specifications. Further, Defendants and Plasvacc concluded that the formalin kill period used to manufacture the October vaccine was significantly longer than the thirty minute period detailed in the Outline for Production. In fact, Defendants acknowledged that the formalin kill period for the October vaccine was approximately four days.

28. After the teleconference, Dr. Wilson contacted Ms. Peterson and repeated the conclusions reached by both Defendants and Plasvacc concerning the faulty October vaccine.

29. On or about December 17, 2013, Ms. Peterson responded to Dr. Wilson's email concerning the faulty October vaccine. Ms. Peterson again acknowledged

Defendants' fault in producing the October vaccine in accordance with the Outline for Production.

30. As a result of the ineffective October vaccine, Plasvacc could not produce a sufficient quantity of the Equiplas R or Equiplas REA products. The October vaccine drastically reduced Plasvacc's donor herd's capability of producing Equiplas R and Equiplas REA grade plasma. In fact, during the period that the October vaccine was used, only five of Plasvacc's donor horses were able to produce such plasma. Consequently, Plasvacc's capability of producing its two marque products, Equiplas R and Equiplas REA, was severely restricted for over a year.

31. In 2013, Plasvacc expended significant amounts of money and effort marketing the Equiplas R and Equiplas REA products. However, due to their inability to produce the products, in February 2014, Plasvacc depleted their Equiplas R and Equiplas REA inventory and were unable to fulfill its customers' needs. As of May 8, 2014, Plasvacc had outstanding and unfulfilled purchase orders for over 1,300 bags of Equiplas R and 250 bags of Equiplas REA. If fulfilled, the purchase orders would have grossed at least approximately $300,000 in revenue. As a result of its inability to fulfill these orders, Plasvacc not only wasted the time and money it expended in marketing the Equiplas R and Equiplas REA products, but also lost current and potential customers.

32. Moreover, during its investigation of the matter, Plasvacc was forced to eliminate a number of valuable donor horses from its herd based on the presumption that they could no longer produce adequate plasma for the Equiplas R and Equiplas REA products. It is estimated that these donor horses were capable of producing fifteen doses of Equiplas R and Equiplas REA plasma every month for an average of eight to ten years. Also, Plasvacc expended significant time and money introducing replacement donor horses to the herd. As stated above, when introducing new horses to the donor herd, the horses must undergo substantial and costly testing.

33. In sum, Plasvacc's income and profitability has been greatly decreased by Defendants' failure to supply the October vaccine in accordance with the Outline for Production.

34. As further evidence of the effect of the October vaccine, Plasvacc's donor herd began producing Equiplas R and Equiplas REA grade plasma again after an *R. equi* vaccine manufactured in accordance with the Outline for Production was implemented.

## FIRST CAUSE OF ACTION

(Non Compliance with the VSTA)

(Against All Defendants)

35. Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 34, inclusive, above.

36. On information and belief, Defendants submitted to the USDA a request to produce an experimental biological product, the *R. equi* vaccine. Along with the request, Defendants submitted an Outline for Production of the vaccine which included Plasvacc's specifications to produce the vaccine with an optimal bacterial content of $4\times10^8 \sim 4\times10^9$ and a formalin kill period of thirty minutes.

37. On information and belief, the USDA approved Defendants' request to produce an experimental *R. equi* vaccine.

38. On information and belief, Defendants violated the VSTA by failing to abide by the Outline for Production submitted to the USDA and the USDA approval to produce the October vaccine. Specifically, Defendants did not use the optimal bacterial content of $4\times10^8 \sim 4\times10^9$ or a formalin kill period of thirty minutes when manufacturing the October vaccine.

39. As a direct and proximate result of Defendants' failure to abide by the VSTA and the USDA approval, Plasvacc has suffered and will suffer significant damages subject to proof at the time of trial.

## SECOND CAUSE OF ACTION

(Breach of Contract)

(Against All Defendants)

40. Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 39, inclusive, above.

41. Plasvacc and Defendants entered into a valid, enforceable contract, whereby Defendants agreed to produce for Plasvacc an *R. equi* vaccine in accordance with Plasvacc's specifications and as memorialized in the Outline for Production. In exchange, Plasvacc agreed to compensate Defendants.

42. Defendants breached the terms of the agreement by supplying a defective *R. equi* vaccine that did not conform to the Outline for Production. The October vaccine was not manufactured with the requisite bacterial content or formalin kill period, as discussed hereinabove.

43. Without knowledge of the defect in the October vaccine, Plasvacc fully performed all obligations required on its part under the agreement including paying Defendants the price of the Purchase Order.

44. As a result of Defendants' breach, Plasvacc has suffered and will suffer significant damages subject to proof at the time of trial.

## THIRD CAUSE OF ACTION

(Strict Products Liability)

(Against All Defendants)

45. Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 39, inclusive, above.

46. Defendants manufactured and sold and otherwise placed the October vaccine into the stream of commerce. At that time, the October vaccine was defectively manufactured, as discussed hereinabove.

47. Plasvacc used the October vaccine in a manner that was foreseeable to Defendants because the October vaccine's purpose was to vaccinate horses.

48. As a direct and proximate result of Defendants' failure to provide the October vaccine in accordance with the Outline for Production, Plasvacc has suffered and will suffer significant damages subject to proof at the time of trial.

### FOURTH CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability)

(Against All Defendants)

49. Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 39, inclusive, above.

50. For purposes of this case, Defendants are merchants because their primary business is manufacturing and selling animal vaccines.

51. Privity exists between Defendants and Plasvacc because the parties entered into a binding contract for the sale of the October vaccine.

52. The October vaccine was not reasonably fit for the ordinary purposes for which it was intended because it failed to produce adequate plasma for the Equiplas R and Equiplas REA products, and it failed to abide by the Outline for Production.

53. As a direct and proximate result of Defendants' failure to provide the October vaccine in accordance with the Outline for Production, Plasvacc has suffered and will suffer significant damages subject to proof at the time of trial.

### FIFTH CAUSE OF ACTION

(Violation of California Business and Professions Code § 17200 *et seq.*)

(Against All Defendants)

54. Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 39, inclusive, above.

55. California Business & Professions Code Section 17200 *et seq.* gives individuals a private right of action against unlawful, unfair, and deceptive business activities.

56.  Defendants engaged in an unlawful business activity when Defendants violated the VSTA by supplying an *R. equi* vaccine that did not abide by the information submitted to the USDA, as discussed hereinabove.

57.  As a result of Defendants' unlawful acts, Defendants unfairly obtained the benefits of the Purchase Order from Plasvacc while Plasvacc never received the consideration promised by Defendants.

## SIXTH CAUSE OF ACTION

(Negligence)

(Against All Defendants)

58.  Plasvacc pleads, alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 39, inclusive, above.

59.  Defendants manufactured and sold the October vaccine to Plasvacc. In connection with these activities, Defendants had the duty to act with care. Defendants' duty of care included the obligation to manufacture the October vaccine according to the Outline for Production submitted to the USDA.

60.  Defendants breached the duty of care by not manufacturing the October vaccine according to the Outline for Production. Specifically, Defendants failed to use the formalin kill period and bacterial content stated in the Outline for Production. Further, these acts constitute a violation of the VSTA.

61.  Defendants' failure to abide by the Outline for Production directly and proximately caused Plasvacc to suffer damage. In fact, the October vaccine made Plasvacc's donor horses unable to produce the requisite plasma for Equiplas R and Equiplas REA.

62.  As a direct and proximate result of Defendants' failure to provide the October vaccine in accordance with the Outline for Production, Plasvacc has suffered and will suffer significant damages subject to proof at the time of trial.

WHEREFORE, Plasvacc prays for judgment against Defendants as follows:

1. For compensatory damages in an amount subject to proof at trial;

2. For interest and prejudgment interest therein;

3. For restitution of all gains, profits and advantages obtained by Defendants as a result of their wrongful and unlawful conduct, in an amount to be proven at trial; and,

4. For such other relief as the Court may deem proper.

Dated: November 13, 2014

Respectfully submitted,

LOCKE LORD LLP

By: /s/ Mitchell J. Popham
Mitchell J. Popham
Attorney for Plaintiff
PLASVACC USA, INC.

## JURY TRIAL DEMAND

1. Plasvacc hereby demands trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: November 13, 2014

LOCKE LORD LLP

By: _____
Mitchell J. Popham
Attorneys for Plaintiff
PLASVACC USA, INC.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLASVACC USA, INC.<br><br>*Plaintiff(s)*<br>v.<br><br>HESKA CORPORATION, a Delaware corporation;<br>DIAMOND ANIMAL HEALTH, INC., an Iowa<br>corporation; and DOES 1 through 10, inclusive,<br><br>*Defendant(s)* | Civil Action No.<br><br>CV14-08812 AB(ASx) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
HESKA CORPORATION
c/o Business Filings Incorporated, Agent for Service of Process
555 Capitol Mall Suite 1000
Sacramento, CA 95814

DIAMOND ANIMAL HEALTH, INC.
c/o CT Corporation System, Agent for Service of Process
818 West Seventh Street 2nd Fl.
Los Angeles, CA 90017
OR
c/o California Secretary of State, Agent for Service of Process
1500 11th Street
Sacramento, CA 95814

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Michell J. Popham, Esq.
LOCKE LORD LLP
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Tel: (213) 485-1500; Fax: (213) 485-1200



AO 440 (Rev. 06/12) Summons in a Civil Action

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 11/13/2014

CLERK OF COURT

_____
Signature of Clerk or Deputy Clerk

1170

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:
_____


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Plasvacc USA, Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
HESKA CORPORATION, a Delaware corporation; DIAMOND ANIMAL HEALTH, INC., an Iowa corporation; and DOES 1 through 10, inclusive

**(b) County of Residence of First Listed Plaintiff** San Luis Obispo County
(EXCEPT IN U.S. PLAINTIFF CASES)

**County of Residence of First Listed Defendant** Polk County
(IN U.S. PLAINTIFF CASES ONLY)

**(c) Attorneys** (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.
Mitchell J. Popham (SBN 126194)
Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Tel: (213) 485-1500   Fax: (213) 485-1200

**Attorneys** (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The federal statute at issue is the Virus-Serum-Toxin Act, 21 U.S.C. §§ 151 to 159. The cause of action is founded in a failure to abide by the VSTA and the corresponding federal regulations.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS PERSONAL INJURY** | **TORTS PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☒ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

CV14-08812

**FOR OFFICE USE ONLY:**   Case Number: _____

CV-71 (10/14)   CIVIL COVER SHEET   Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court?<br>☐ Yes ☒ No<br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br>☐ Yes ☒ No<br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br><br>☐ NO. Continue to Question B.2. |
|---|---|---|
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br><br>☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br>☐ Yes ☒ No<br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br><br>☐ NO. Continue to Question C.2. |
|---|---|---|
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br><br>☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A?<br>☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B?<br>☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☒ Yes | ☐ No |

CV-71 (10/14)  CIVIL COVER SHEET  Page 2 of 3

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**? ☒ NO ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO ☐ YES

If yes, list case number(s): _____

Civil cases are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** /s/ [signature] DATE: November 13, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com